**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION**

| | |
|---|---|
| SAULSBURY INDUSTRIES, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. _____ |
| ) | |
| CABOT CORPORATION AND ) | |
| CLECO POWER, LLC ) | **JURY TRIAL DEMANDED** |
| ) | |
| Defendants. ) | |
| ) | |

Plaintiff Saulsbury Industries, Inc. ("Saulsbury") files this Original Complaint against Defendants, Cleco Power, LLC and Cabot Corporation and would respectfully show as follows.

## I.    JURISDICTION AND VENUE

1. Saulsbury is a Texas corporation with a principal place of business in Odessa, Texas. It is therefore a citizen of Texas for diversity purposes.

2. Defendant Cabot Corporation ("Cabot") is a Delaware corporation with a principal place of business in Boston, Massachusetts. It is therefore a citizen of Delaware and Massachusetts for diversity purposes. It may be served through its registered agent, CT Corporation System, located at 3867 Plaza Tower Drive, Baton Rouge, Louisiana 70816.

3. Defendant Cleco Power, LLC ("Cleco") is a limited liability company whose sole member is Cleco Corporate Holdings LLC. The sole member of Cleco Corporate Holdings LLC is Cleco Group LLC. The sole member of Cleco Group LLC is Cleco Partners L.P. The partners of Cleco Partners L.P. are Macquarie Group, Ltd., which is an Australian corporation with a

1

principal place of business in Sydney, New South Wales, Australia; British Columbia Investment Management Corporation, which is a Canadian corporation with a principal place of business in Victoria, British Columbia, Canada; and John Hancock Financial Services, Inc., which is a Delaware corporation with a principal place of business in Boston, Massachusetts. Cleco is therefore a citizen of Australia, Canada, Delaware, and Massachusetts for diversity purposes. Cleco may be served through its registered agent, Mark D. Pearceeph, who can be found at 2030 Donahue Ferry Road, Pineville, Louisiana 71360.

4. Saulsbury seeks damages well in excess of $75,000, exclusive of interest and costs. Diversity jurisdiction therefore exists pursuant to 28 U.S.C. §1332.

5. Venue is proper in this district pursuant to 28 U.S.C. § 1391 because Defendants reside in this district and a substantial portion of the events or omissions that are the subject of this action occurred in this district.

## II.   FACTUAL BACKGROUND

6. Defendants Cabot and Cleco (collectively the "Developers") are developing a 50 mega-watt renewable energy waste heat power plant and emissions control system at Defendant Cabot's carbon black manufacturing facility in Franklin, Louisiana (the "Project"). The Developers hired Saulsbury to perform work as a prime contractor on the Project.

7. The Project has been plagued by difficulties and delay caused by the Developers. Saulsbury was detrimentally affected by these delays as well as numerous other problems caused by Developers throughout the Project.

8. On June 30, 2017, before the parties formally entered into a contract, the Developers issued Saulsbury a limited notice to proceed, thereby notifying Saulsbury to commence work by July 5, 2017.

9. From the beginning, Saulsbury's ability to execute against the approved Project baseline and execution plan was hindered by Developers. In the Developers' initial RFP package, the information supplied indicated milestones that were utterly unrealistic and could not be achieved. For instance, Developers had scheduled a November 27, 2017 "outage start date" in the RFP materials, but that date was pushed from November 27, 2017 to March 24, 2018 before Saulsbury even arrived on-site. (Plant outage is a stage of construction where the existing manufacturing plant is shut down to enable the incorporation of new equipment into the existing plant facilities.)

10. The planned outage start date was again pushed from March 24, 2018, to June 14, 2018 before Saulsbury had even executed its final construction contracts with Developers (i.e., in the period between the limited notice to proceed and execution of the formal contractual agreements). Saulsbury and Developers eventually executed three (3) related construction agreements: the Services Agreement, the Special Conditions, and a Task Order, all effective as of September 18, 2017.

11. Once Saulsbury commenced construction activities on-site, Saulsbury was hindered by late foundation work performed by the Developers. Indeed, as the Project progressed through execution stage, the Developer-installed foundations were not completed until two-and-a half (2 ½) months after the original planned "outage" date supplied in the RFP package schedule.

12. The Developers candidly admitted that they were late in meeting foundation milestones. Once all of the foundations that were in the Developers' scope were finally completed and handed over to Saulsbury, the parties recognized that the June 14, 2018 outage start date was at risk because of Developers' delays.

13. Saulsbury requested relief in late 2017 from Developers by submitting a change order and other communications documenting additional costs it had incurred and impacts to its schedule due to the Developers' delays. Developer-caused delays continued, and Saulsbury continued to press Developers for additional relief. These concerns became the subject of discussions early in 2018.

14. Those discussions culminated in a binding, written email agreement dated February 9, 2018.

15. The terms of the agreement provided that:

(a) Developers must pay Saulsbury in full for the original contract value and execution of the base scope of work (*i.e.*, the $28,951,563 contract price);

(b) Any additional scope or changes in the base scope (*i.e.*, deferred scope) would be addressed per the existing change order process;

(c) Costs outside the contract value of $28,951,562 (direct or indirect) were to be reimbursed to Saulsbury at cost only with no profit or fee (which also applied to Saulsbury's sub-contractor costs above the current contract value).

16. Notwithstanding the Developer-caused delays that made the existing outage-related milestone completion dates extremely difficult to achieve, Saulsbury also agreed to accelerate and maintain a contractual commitment to achieve a Pre-Outage milestone completion date and an Outage milestone completion date with the following liquidated damages, up to a specified cap:

(a) Pre-Outage milestone completion date of June 14, 2018 ($25,000 of liquidated damages per day);

(b) Outage milestone completion date of July 8, 2018 ($75,000 of liquidated damages per day);

   (c) All liquidated damages capped at $625,000.

 17. On February 11, 2018, following the agreement, Saulsbury and Developers jointly agreed to increase manpower and otherwise begin acceleration efforts to achieve the June 14, 2018 milestone date.

 18. Following the agreement, however, there were many new delays caused by Developers or that were otherwise outside the control of Saulsbury, and which had a significant impact on Saulsbury's ability to achieve the agreed accelerated schedule.

 19. Moreover, although the parties had a binding February 9 agreement, after consulting with their legal teams, Developers attempted to run away from the terms of that agreement. In the months following the February 9, 2018 agreement, after Saulsbury had incurred substantial acceleration costs in reliance on Developers' promises, Developers refused to acknowledge their obligations under that agreement. Instead, they repeatedly proposed alternative terms that differed from those in the February 9, 2018 agreement.

 20. After two months of herculean efforts by Saulsbury to meet the deadlines agreed by the parties, Developers instructed Saulsbury to stop its acceleration efforts on April 29, 2018, because they believed the forecasted pre-outage milestone in the acceleration schedule was no longer achievable (due to their own continuing problems).

 21. Developers then persisted in attempting to rewrite the parties' February 9, 2018 agreement. They proposed to compensate Saulsbury in a way that would only pay it for increased costs during Developers' after-the-fact defined acceleration period, which is not what the parties agreed to in the February 9, 2018 agreement. That agreement did not state or even contemplate that Saulsbury would only be paid for increased costs during a defined acceleration period that ended in April. Indeed, not only would that have been impossible, as there was no defined

acceleration period back in February 2018, but such an agreement would not have compensated Saulsbury for the Developer's impacts to its work in late 2017 – the impacts Developers had admitted to, and that prompted the February 2018 agreement in the first place.  The February agreement was a compromise of Saulsbury's claims for past impacts to its work, and an agreed framework for Developers to fairly compensate Saulsbury for its future acceleration efforts.

22. Before and during the acceleration efforts, Developers repeatedly promised that they would "make Saulsbury whole" for the increased work and costs Saulsbury was required to incur on the job due to Developers' admitted delays and interferences.  The February 9, 2018 agreement achieved that purpose and was intended to "make Saulsbury whole."

23. Two months into the acceleration effort, it became clear that the respective Pre-Outage and Outage milestone completion dates of June 14, 2018 and July 8, 2018 were no longer achievable.  Again, that was because of the continuing Developer-caused delays, and Saulsbury thus should not responsible for Pre-Outage and Outage liquidated damages.

24. Indeed, the Pre-Outage and Outage milestone completion dates were a moving target from the start of the Project.  With this continual shift in execution and continued movement of the outage period, the Developers made it impossible for Saulsbury to execute to the Baseline Plan, the Acceleration Plan, or the Post Acceleration Plan.

25. Throughout the entirety of the Project, Saulsbury was impacted by the Developers' lack of planning and communication of their internal plan, constant scope increases and decreases, and general lack of responsiveness.  These items all impacted Saulsbury's ability to execute its plan and maintain any type of workforce continuity or manage its Project execution plan. The cumulative Developer-driven delays shifted the scheduled completion date and resulted in a significant impact to Saulsbury's direct and indirect costs.

26. Saulsbury had to constantly reassign workers, accelerate and reevaluate work priorities, execute activities out of sequence, and lose workforce continuity, all of which had a significant impact on the schedule and increased Saulsbury's costs.

27. Developers acknowledged as much in the meetings that culminated in the February 9 agreement, and they repeated their promise to "make Saulsbury whole" in subsequent meetings. Nevertheless, Developers have totally reneged on their promise. They have paid Saulsbury *nothing* for its acceleration efforts, nothing for Developers' admitted delays that required the February 2018 agreement to begin with, and nothing for Developers' continued delays and interferences that persisted throughout Saulsbury's work on the Project.

28. Instead of living up to their obligations, in a contrived attempt at blame shifting, on October 26, 2018, Developers sent a letter described as a Notice of Default, purporting to describe events that would supposedly constitute Events of Default under the contract, but also expressly clarifying that Developers were not terminating the contract. That letter also made serious but unsubstantiated allegations that Saulsbury had failed to comply with site safety requirements. Saulsbury immediately, and repeatedly, asked for written substantiation of such serious allegations, and Developers were unable to provide any such substantiation.

29. On November 2, 2018, the Developers then issued to Saulsbury a "Notice to Demobilize," without citing any proper contractual basis to do so. The relevant contractual terms in the Special Conditions provide only for termination for cause or convenience. The Developers refused to clarify the basis for the "Notice to Demobilize" after Saulsbury inquired. In fact, when pressed, the Developers refused to state that they were terminating Saulsbury for cause (presumably, because they know there is no basis for a termination for cause). In fact, not only did the Developers never formally terminate the contracts with Saulsbury (for cause or

convenience), they actually sought to retain different crews of Saulsbury's personnel who were already on-site for other purposes (and some of which were already performing services on the Project) to complete the Project.

30. Although Developers failed to give the required ten-day (10) notice, the only conceivable basis for Developers to have terminated Saulsbury is a termination for convenience under Section 10.1 of the Special Conditions, which requires Developers to reimburse Saulsbury for its demobilization costs.

31. Developers, however, have not acknowledged that they are responsible for these costs.

### III.   CAUSES OF ACTION

#### Count 1 – Breach of Contract

32. The preceding paragraphs are incorporated by reference as if fully set out herein.

33. Saulsbury and Developers made a binding modification to the parties' contractual agreements on February 9, 2018.  Developers have refused to compensate Saulsbury according to the terms of the February 9, 2018 amendment.

34. Developers are accordingly in breach of that agreement.

35. Developers have also refused to compensate Saulsbury for Developer-driven delays pursuant to the Services Agreement and Special Conditions.  Developers are accordingly in breach of the Services Agreement and Special Conditions as well.

36. Developers are also in breach of the Special Conditions to the extent that they do not concede that Saulsbury's termination was a termination for convenience under Section 10.1 of the Special Conditions, and refuse to compensate Saulsbury for its demobilization costs.

## Count 2 – Enforcement of Lien/Privilege

37. The preceding paragraphs are incorporated by reference as if fully set out herein.

38. On September 5, 2018, Saulsbury filed and recorded a document entitled "*Saulsbury Industries, Inc.'s Affidavit and Sworn Statement of Claim and Privilege*" as File Number: 345224, Book: 1547 Page: 548 in the official records of St. Mary Parish, Louisiana against the immovable property of Cabot. A copy of Saulsbury's lien against Cabot is attached hereto as Exhibit "1" and incorporated herein by reference.

39. On December 5, 2018, Saulsbury filed and recorded a document entitled *"Saulsbury Industries, Inc.'s Affidavit and Sworn Statement of Claim and Privilege"* as File Number: 346126, Book: 1554 Page: 250 in the official records of St. Mary Parish, Louisiana against the leasehold interest of Cleco. A copy of Saulsbury's lien against the leasehold interest of Cleco is attached hereto as Exhibit "2" and incorporated herein by reference.

40. Under the Louisiana Private Works Act, La. R.S. 9:4801, *et seq.*, Saulsbury has a privilege on the property of the Developers upon which Saulsbury performed work.

41. The Developers' property upon which Saulsbury performed work is located in St. Mary Parish, Louisiana.

## Count 3 – Declaratory Judgment

42. The preceding paragraphs are incorporated by reference as if fully set out herein.

43. Developers delivered a "Notice to Demobilize" to Saulsbury on November 2, 2018, but they have refused to state under what theory they have requested Saulsbury to demobilize. Despite Saulsbury's repeated attempts to get Developers to state the contractual basis for removing Saulsbury from the Project, Developers have refused to do so.

44. Because Developers have not (and cannot) terminate Saulsbury for cause, the only other option supporting Developers' decision is a termination for convenience, which entitles Saulsbury for its costs to demobilize.

45. Developers, however, have refused to acknowledge that they have terminated Saulsbury for convenience.

46. Accordingly, a justiciable controversy exists concerning Developers' termination of Saulsbury from the Project.

47. Pursuant to 28 U.S.C. § 2201 and Fed. R. Civ. P. 57, Saulsbury respectfully requests that the Court declare that Developers' termination of Saulsbury is a termination for convenience under Section 10.1 of the Special Conditions.

## IV. DEMAND FOR JURY TRIAL

48. Saulsbury demands a trial by jury on all issues so triable.

## V. PRAYER

WHEREFORE, Plaintiff, Saulsbury Industries, Inc. respectfully prays for the following:

(a) Damages in an amount to be determined at trial;

(b) Recognition and enforcement of its privilege upon and against the property upon which its work was performed as more fully described in Exhibits "1" & "2" attached hereto;

(c) Declaratory Judgment pursuant to 28 U.S.C. § 2201;

(d) Attorneys' fees to the extent allowed by law;

(e) Pre-judgment and post-judgment interest as allowed by law;

(f) Costs of this action; and

(g) Such other relief as the Court deems just and reasonable.

Respectfully submitted:

**WIENER, WEISS & MADISON**
721 North Street
Baton Rouge, LA 70802
225-930-4772 – *Office*
225-930-4775 - *Facsimile*
jmadisoniii@wwmlaw.com

*/s/John M. Madison III*
John M. Madison III, LA Bar 26394
***Attorneys for Saulsbury Industries, Inc.***

**Of Counsel for Saulsbury Industries, Inc.:**

Craig J. Ledet,
KING & SPALDING LLP
1100 Louisiana, Suite 4000
Houston, TX 77002
713-751-3200 – *Office*
713-751-3290 – *Facsimile*
cledet@kslaw.com